CLAIMS VERIFICATION INC
Nationwide

# CONFIDENTIAL INVESTIGATIVE REPORT

Tuesday, April 30, 2013

| | | | | |
|---|---|---|---|---|
| Mr. Adam Kawa | Re: | Your File No. | : | C0000155160 |
| Northwestern Mutual Life Insurance Co. | | Add'l File No. | : | Not Applicable |
| P O Box 3064 | | Our File No. | : | GAB-04B2-040 |
| Milwaukee, WI 53202 | | Insured | : | Virgle W Mc Ever III |
| | | Claimant | : | Virgle W Mc Ever I I I |
| | | D/L | : | Not Applicable |

| | | |
|---|---|---|
| Assignment Received | : | 4/11/2013 |
| Previous Correspondence | : | Not Applicable |
| Type of Claim | : | Disability |
| Alleged Injury | : | Not Applicable |
| Assignment | : | Flat-Rate Surveillance |

## Synopsis

**Report:** Final

**Investigator**: Shane Brown/Claims Verification Incorporated

**Date of Investigation**: Surveillance -- Thursday, April 25, 2013 (7:31 AM - 5:32 PM); Surveillance -- Friday, April 26, 2013 (6:04 AM – 1:07 PM); Surveillance -- Saturday, April 27, 2013 (6:02 AM - 11:20 AM)

**Objectives**: Determine the claimant's daily activities and employment status.

**Pertinent Information**: Surveillance efforts were initiated at the claimant's scheduled doctor's appointment during the early morning hours on Thursday, April 25, 2013. Upon arrival to the Macon Occupational Medicine Office located at 124 Third Street I observed limited activity and a few vehicles present in the parking lot. I did not observe any activity on behalf of the claimant. Therefore, I maintained a suitable surveillance position and awaited the claimant's arrival. During this day, the claimant was first observed at approximately 8:00 AM as he arrived at this location alone in a silver Honda Ridgeline bearing Georgia registration WL30LV. The claimant then exited the vehicle and walked towards the front entrance. The claimant was observed as he used his right hand to open the front door to this facility and entered. It should be noted that the claimant was dressed casually in khaki pants and a short sleeve polo styled shirt. He was not observed to wear any visible support devices in his right arm.



DEFENDANT'S EXHIBIT D-06

NM-001158

CONFIDENTIAL: Do not re-disclose or reproduce without prior written consent from Northwestern Mutual - Date 09/06/2019

The claimant was next observed at approximately 11:27 AM as he exited the medical facility and walked towards his vehicle. He was holding his keys in his right hand, but as he approached his vehicle, he walked between vehicles and he was partially obstructed. Therefore, I was not provided an opportunity to determine which hand he used to open his vehicle door. Mobile surveillance was initiated as he drove to his residence. Shortly after arriving at the claimant's residence, he was observed to depart his community and drove to The Parkway Village Plaza strip mall located at the intersection of Russell Pkwy and Carl Vinson Pkwy. As the claimant turned into the parking lot, my forward progress was impeded by a traffic light at the aforementioned intersection. I then documented the claimant as he exited his vehicle and walked towards the strip mall. Moments later, the claimant was obstructed by traffic, so it was not determined which store the claimant entered. Upon recieving the right-of-way I proceeded into The Parkway Plaza and canvassed the area on foot to determine which store the claimant entered. After entering several stores and a restaurant, the claimant was not observed. However, his vehicle remained stationary in the parking lot. Therefore, I maintained a suitable surveillance position and monitored the area for any activity involving the claimant. At approximately 12:22 PM, I left a detailed message for Mr. Adam Kawa that outlined the events of this investigation. The claimant was observed as he exited Thai Peppers restaurant at approximately 1:34 PM and re-entered into his vehicle. Mobile surveillance was initiated as he departed the area and drove back to his residence. Throughout the balance of this day of investigation I closely monitored the claimant's community, but he was not observed engage in any additional outside activity. Noting the above information, I decided to discontinue my surveillance efforts and departed the area at approximately 5:32 PM. Prior to departing the area, I spoke with Mr. Adam Kawa and we discussed this day of investigation.

Follow up surveillance efforts were initiated in the claimant's community during the early morning hours on Friday, April 26, 2013. Upon arrival to the claimant's residence, I observed no outside activity and his residence was partially obscured by a heavy tree line. Therefore, I was not afforded an opportunity to determine if his vehicle was present in the driveway. Next, I maintained a suitable surveillance position along the claimant's most likely route of departure and monitored the traffic for the claimant's silver Honda Ridgeline. Since his residence could not be directly observed from this surveillance position, I conducted routine spot checks of his residence throughout the morning. During this day, the claimant and his spouse were observed to depart their residence in the aforementioned Honda Ridgeline at approximately 9:43 AM. Mobile surveillance was initiated as the claimant drove to a Kroger gas station where he used his right hand to pump gas into his vehicle. Upon departing this location, the claimant drove to a private residence located at 108 Tanglewood Drive in Warner Robins. While at this location, the claimant was observed as he exited his vehicle and stood in the driveway. Due to the setup of this community, I could only document this activity for a short period of time. Moments later, I elected to maintain a more discreet surveillance position along the claimant's most likely route of departure from this community. Approximately two (2) minutes later, the claimant, his spouse and an unidentified elderly female departed this community and mobile surveillance was continued to Northside High School. While at this school the claimant dropped off his spouse and the aforementioned elderly female at the front entrance. The claimant then parked his vehicle in a nearby parking space and remained inside his vehicle. Several minutes later, the claimant drove back up to the front entrance and the two familiar females re-entered into the claimant's vehicle. Mobile surveillance continued as they departed this location. The claimant and his passengers were eventually observed as they entered onto the southbound lanes of Interstate 75. While driving south on the aforementioned Interstate, I contacted Mr. Adam Kawa and provided an update regarding this investigation.





CONFIDENTIAL: Do not re-disclose or reproduce without prior written consent from Northwestern Mutual - Date 09/06/2019

After approximately forty (40) minutes the claimant exited the Interstate and proceeded to drive south on Georgia State Highway 300 towards the city of Albany.

The claimant eventually passed through Albany and continued south towards Camilla, Georgia. On the way towards the city of Camilla, the highway constricted to two (2) lanes and a moderate amount of traffic congested the road. While attempting to follow the claimant, my lane was blocked by a slow moving truck that was pulling a boat. Furthermore, the passing lane was congested by an equally slow moving van. Meanwhile, the claimant continued towards the city of Camilla. Due to the traffic conditions visual contact with the claimant's vehicle was interrupted. Once I was granted an opportunity to pass the aforementioned slow moving vehicles, I noticed the claimant's vehicle was a significant distance ahead. As we approached the city of Camilla, the claimant's vehicle was still a significant distance ahead, and visual contact with his vehicle was eventually interrupted. Because the claimant was traveling with two (2) passengers, I canvassed several restaurants and other shopping area in the city limits. After an extensive search of the immediate area, the claimant's vehicle was not located. Therefore, I contacted Mr. Adam Kawa and provided another update. At the conclusion of our conversation, I decided to discontinue my surveillance efforts and departed the area at approximately 1:07 PM.

Another day of investigation was initiated in the claimant's community during the early morning hours on Saturday, April 27, 2013. Upon arrival to the claimant's residence I observed no outside activity and his residence was partially obscured by a heavy tree line. Therefore, I was not afforded an opportunity to determine if his vehicle was present in the driveway. Next, I maintained a suitable surveillance position along the claimant's most likely route of departure and monitored the traffic for the claimant's silver Honda Ridgeline. Since his residence could not be directly observed from this surveillance position, I conducted routine spot checks of his residence throughout the morning. As of the eleven o'clock morning hour, I had not observed any activity involving the claimant. Therefore, I attempted to contact Mr. Adam Kawa, so that we could discuss this file. However, I was greeted by his voice mail. Therefore, a detailed message was provided. A few minutes, later I received a return call from Mr. Adam Kawa and we discussed this file. At the conclusion of our conversation, I was instructed to discontinue surveillance and submit a final report as they claimant appeared to be out of town. Noting the above information, I discontinued surveillance and departed the area at approximately 11:20 AM. For additional information, please refer to *Details of Investigation.*

**Documentation**: On April 25, 2013, I obtained approximately six (6) minutes and eighteen (18) seconds of videotape documentation. On April 26, 2013, I obtained approximately ten (10) minutes and five (5) seconds of videotape documentation. On April 27, 2013, I obtained approximately two (2) minutes and fifteen (15) seconds of videotape documentation.

Documented activities are identified with a (VT) in the Details of Investigation section of this report. I have reviewed this videotape documentation and found it to be suitable for evidentiary purposes. As requested, we are submitting a copy of the videotape along with this report and retaining the original until otherwise instructed. Along with this report, I am enclosing four (4) video prints exposed from the videotape.





CONFIDENTIAL: Do not re-disclose or reproduce without prior written consent from Northwestern Mutual - Date 09/06/2019





**Physical Description:** The claimant is a white male, approximately 59 years of age, approximately 5'10" tall, weighing approximately 200 pounds and has curly brown hair. I noted the claimant was wearing slacks and a collared shirt.



**Verbal Report**: Two (2) verbal updates were provided to Mr. Adam Kawa, during each day of investigation conducted on April 25, 2013, April 26, 2013 and April 27, 2013.

**Conclusion and Recommendations**: Based on surveillance conducted to date, there is no evidence or indication the claimant is employed. However, he did display the ability to use his right hand to open doors to his vehicle and to a building. He was also observed to use his right hand to pump gas into his vehicle. During this observation of the claimant he was not observed to utilize any visible support devices that might have assisted his injury to his right hand.

At this time I will submit this report and discontinue my handling of this file. Should you deem additional investigation into this claim is warranted, please contact our office and we will give it our immediate attention.

**Case Status**: Closed/Pending further instructions.

Thank you very much for the opportunity to be of service. Should you have any questions regarding this investigation, feel free to contact me at (888) 284-2000.

Enc: Videotape Copy (1)





CONFIDENTIAL: Do not re-disclose or reproduce without prior written consent from Northwestern Mutual - Date 09/06/2019

## Details of Investigation

**Macon Occupational Medicine Office**
**124 Third Street, Macon Georgia** **Thursday, April 25, 2013**

7:31 AM
Upon arrival to the Macon Occupational Medicine Office located at 124 Third Street I observed limited activity and a few vehicles present in the parking lot. I did not observe any activity on behalf of the claimant. Therefore, I maintained a suitable surveillance position and awaited the claimant's arrival. A time shot of the area was obtained.

8:00 AM (VT)
The claimant was first observed as he arrived at this location alone in a silver Honda Ridgeline bearing Georgia registration WL30LV.

8:01 AM (VT)
The claimant then exited the vehicle and walked towards the front entrance. The claimant was observed as he used his right hand to open the front door to this facility and entered. It should be noted that the claimant was dressed casually in khaki pants and a short sleeve polo styled shirt. He was not observed to wear any visible support devices in his right arm.



8:03 AM (VT)
A video shot of the claimant's vehicle present in the parking lot.

8:35 AM (VT)
A time shot of the claimant's vehicle present in the parking lot.

9:30 AM (VT)
A time shot of the claimant's vehicle present in the parking lot.

10:31 AM (VT)
A time shot of the claimant's vehicle present in the parking lot.

11:27 AM (VT)
The claimant was next observed as he exited the medical facility and walked towards his vehicle. He was holding his keys in his right hand, but as he approached his vehicle, he walked between vehicles and he was partially obstructed. Therefore, I was not provided an opportunity to determine which hand he used to open his vehicle door.





CONFIDENTIAL: Do not re-disclose or reproduce without prior written consent from Northwestern Mutual - Date 09/06/2019

11:28 AM (VT)
Mobile surveillance was initiated as the claimant departed the area.

12:04 PM
The claimant was observed as he arrived back at his residence.

12:10 PM
The claimant departed his residence and mobile surveillance was continued.

12:18 PM (VT)
The claimant was observed as he arrived at The Parkway Village Plaza strip mall located at the intersection of Russell Pkwy and Carl Vinson Pkwy. As the claimant turned into the parking lot, my forward progress was impeded by a traffic light at the aforementioned intersection. I then documented the claimant as he exited his vehicle and walked towards the strip mall. Moments later, the claimant was obstructed by traffic, so it was not determined which store the claimant entered.

12:20 PM (VT)
Upon recieving the right-of-way I proceeded into The Parkway Plaza and documented the claimant's vehicle present in the parking lot.

12:22 PM
I left a detailed message for Mr. Adam Kawa that outlined the events of this investigation.

12:29 PM
I canvassed the area on foot to determine which store the claimant entered.

12:56 PM
After entering several stores and a restaurant, the claimant was not observed. However, his vehicle remained stationary in the parking lot. Therefore, I maintained a suitable surveillance position and monitored the area for any activity involving the claimant.

1:30 PM (VT)
A time shot of the claimant's vehicle present in the parking lot.

1:34 PM (VT)
The claimant was observed as he exited Thai Peppers restaurant and re-entered into his vehicle. It should be noted that the claimant used his right hand to open the vehicle door. Mobile surveillance was initiated as he departed the area.

1:47 PM (VT)
The claimant was observed as he arrived back at his residence. I then maintained a suitable surveillance position along the claimant's most likely route of departure and monitored for any activity involving the claimant.

2:33 PM (VT)
A time shot of the claimant's community revealed no outside activity on behalf of the claimant.

3:31 PM (VT)
A time shot of the claimant's community revealed no outside activity on behalf of the claimant.

4:31 PM (VT)
A time shot of the claimant's community revealed no outside activity on behalf of the claimant.





CONFIDENTIAL: Do not re-disclose or reproduce without prior written consent from Northwestern Mutual - Date 09/06/2019

5:30 PM
I spoke with Mr. Adam Kawa and we discussed this day of investigation.

5:32 PM (VT)
Throughout the balance of this day of investigation I closely monitored the claimant's community, but he was not observed engage in any additional outside activity. Noting the above information, I decided to discontinue my surveillance efforts and departed the area. A time shot of the claimant's community revealed no outside activity on behalf of the claimant.

**Surveillance - Claimant's Residence**
**107 Hickory Lane, Bonaire, Georgia** **Friday, April 26, 2013**

6:04 AM (VT)
Upon arrival to the claimant's residence I observed no outside activity and his residence was partially obscured by a heavy tree line. Therefore, I was not afforded an opportunity to determine if his vehicle was present in the driveway. Next, I maintained a suitable surveillance position along the claimant's most likely route of departure and monitored the traffic for the claimant's silver Honda Ridgeline. Since his residence could not be directly observed from this surveillance position, I conducted routine spot checks of his residence throughout the morning.

7:04 AM (VT)
A time shot of the claimant's community revealed no outside activity.

8:02 AM (VT)
A time shot of the claimant's community revealed no outside activity.

9:03 AM (VT)
A time shot of the claimant's community revealed no outside activity.

9:43 AM
The claimant and his spouse were observed to depart their residence in the aforementioned Honda Ridgeline. Mobile surveillance was initiated.

9:47 AM (VT)
The claimant arrived at a Kroger gas station.

9:49 PM (VT)
The claimant exited his vehicle and used his right hand to pump gas into his vehicle.

9:50 AM (VT)
The claimant used his right hand to replace the gas pump back on the gas tank. He then re-entered into his vehicle using his right hand to open the vehicle door.

9:51 AM (VT)
Mobile surveillance continued as the claimant departed the area.

10:05 AM (VT)
The claimant drove to a private residence located at 108 Tanglewood Drive in Warner Robins. While at this location, the claimant was observed as he exited his vehicle and stood in the driveway. Due to the setup of this community, I could only document this activity for a short period of time. Moments later, I elected to maintain a more discreet surveillance position along the claimant's most likely route of departure from this community.





CONFIDENTIAL: Do not re-disclose or reproduce without prior written consent from Northwestern Mutual - Date 09/06/2019

10:07 AM
The claimant, his spouse and an unidentified elderly female departed this community and mobile surveillance was continued.

10:11 AM (VT)
The claimant and his passengers arrived at Northside High School. While at this school the claimant dropped off his spouse and the aforementioned elderly female at the front entrance.

10:14 AM (VT)
The claimant then parked his vehicle in a nearby parking space and remained inside his vehicle.

10:17 AM (VT)
The claimant drove back up to the front entrance and the two familiar females re-entered into the claimant's vehicle.

10:18 AM (VT)
Mobile surveillance continued as they departed this location.

10:36 AM (VT)
The claimant and his passengers were eventually observed as they entered onto the southbound lanes of Interstate 75.

10:53 AM (VT)
A video shot of the claimant's vehicle traveling south on Interstate 75.

11:01 AM (VT)
A video shot of the claimant's vehicle traveling south on Interstate 75.

11:06 AM
I contacted Mr. Adam Kawa and provided an update regarding this investigation.

11:16 AM (VT)
The claimant exited the Interstate and proceeded to drive south on the Georgia Florida Expressway (Highway 300) towards the city of Albany.

11:25 AM (VT)
The claimant's vehicle was documented as it continued to travel south on Hwy 300.

11:56 AM (VT)
While attempting to follow the claimant, my lane was blocked by a slow moving truck that was pulling a boat. Furthermore, the passing lane was congested by an equally slow moving van. Meanwhile, the claimant continued to travel towards the city of Camilla. Due to the traffic conditions visual contact with the claimant's vehicle was interrupted.

12:01 PM (VT)
Once I was granted an opportunity to pass the aforementioned slow moving vehicles, I noticed the claimant's vehicle was a significant distance ahead.

12:10 PM
As we approached the city of Camilla, the claimant's vehicle was still a significant distance ahead, and visual contact with his vehicle was eventually interrupted.



CONFIDENTIAL: Do not re-disclose or reproduce without prior written consent from Northwestern Mutual - Date 09/06/2019

12:15 PM (VT)
Because the claimant was traveling with two (2) passengers, I canvassed several restaurants and other shopping area in the city limits.

7:06 PM
I contacted Mr. Adam Kawa and we discussed this file. At the conclusion of our conversation, I confirmed that I would conduct additional surveillance in the claimant's community on Saturday, April 27, 2013.

1:07 PM (VT)
After an extensive search of the immediate area, the claimant's vehicle was not located. Therefore, I contacted Mr. Adam Kawa and provided another update. At the conclusion of our conversation, I decided to discontinue my surveillance efforts and departed the area.

**Surveillance - Claimant's Residence**
**107 Hickory Lane, Bonaire, Georgia** **Saturday, April 27, 2013**

6:02 AM (VT)
Upon arrival to the claimant's residence I observed no outside activity and his residence was partially obscured by a heavy tree line. Therefore, I was not afforded an opportunity to determine if his vehicle was present in the driveway. Next, I maintained a suitable surveillance position along the claimant's most likely route of departure and monitored the traffic for the claimant's silver Honda Ridgeline. Since his residence could not be directly observed from this surveillance position, I conducted routine spot checks of his residence throughout the morning.

7:01 AM (VT)
A time shot of the claimant's community revealed no outside activity.

8:02 AM (VT)
A time shot of the claimant's community revealed no outside activity.

9:01 AM (VT)
A time shot of the claimant's community revealed no outside activity.

10:00 AM (VT)
A time shot of the claimant's community revealed no outside activity.

11:03 AM (VT)
A time shot of the claimant's community revealed no outside activity.

11:06 AM
I attempted to contact Mr. Adam Kawa, so that we could discuss this file. However, I was greeted by his voice mail. Therefore, a detailed message was provided.

11:16 AM
I received a return call from Mr. Adam Kawa and we discussed this file. At the conclusion of our conversation, I was instructed to discontinue surveillance and submit a final report as they claimant appeared to be out of town.

11:20 AM
Noting the above information, I discontinued surveillance and departed the area.

**END OF REPORT**





CONFIDENTIAL: Do not re-disclose or reproduce without prior written consent from Northwestern Mutual - Date 09/06/2019